**PUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

<table>
<tr>
<td>

CARROLL MOORE,
        *Plaintiff-Appellant,*

v.

CITY OF ASHEVILLE, NORTH
CAROLINA; JAMES L. WESTBROOK, JR.,
in his official capacity as the City
Manager of Asheville, North
Carolina; ASHEVILLE POLICE
DEPARTMENT,
        *Defendants-Appellees.*

</td>
<td>No. 04-1003</td>
</tr>
</table>

Appeal from the United States District Court
for the Western District of North Carolina, at Asheville.
Lacy H. Thornburg, District Judge.
(CA-03-218-1)

Argued: November 30, 2004

Decided: January 25, 2005

Before NIEMEYER, LUTTIG, and KING, Circuit Judges.

---

Affirmed and remanded by published opinion. Judge Niemeyer wrote
the opinion, in which Judge Luttig and Judge King joined.

---

## COUNSEL

**ARGUED:** Mathew D. Staver, LIBERTY COUNSEL, Longwood,
Florida, for Appellant. Sharon Tracey Barrett, PATLA, STRAUS,

ROBINSON & MOORE, P.A., Asheville, North Carolina, for Appellees. **ON BRIEF:** Michael Schmidt, PATRICK HENRY JUSTICE CENTER, Laurinburg, North Carolina; Erik W. Stanley, Rena M. Lindevaldsen, Anita L. Staver, Joel L. Oster, LIBERTY COUNSEL, Longwood, Florida, for Appellant. Curtis W. Euler, CITY ATTORNEY'S OFFICE, Asheville, North Carolina, for Appellees.

---

**OPINION**

NIEMEYER, Circuit Judge:

Carroll Moore, a carpenter from Tuckasegee, North Carolina, regularly engages in street preaching in Asheville, North Carolina, and elsewhere. In March and again in April 2003, Moore was cited for violations of Asheville's noise ordinance, Asheville, N.C. Code of Ordinances § 10-84, when his preaching allegedly interfered with permitted events taking place in Asheville's public forums. In both instances, Moore paid fines, which he did not appeal administratively or to the state courts. Rather, after the time for exhausting state remedies apparently had expired, he commenced this action against the City of Asheville and its officials under 42 U.S.C. § 1983, alleging that his conduct was protected by the First and Fourteenth Amendments to the U.S. Constitution and that Asheville's noise ordinance, as well as related ordinances, was unconstitutional both on its face and as applied to his circumstances. He seeks a declaratory judgment, injunctive relief, and damages.

The district court denied the defendants' motion to dismiss but stayed the proceedings "pending the outcome o[f] state court proceedings," based on the doctrine of *Younger v. Harris*, 401 U.S. 37 (1971) (holding that a federal court should generally refrain from intervening in ongoing state criminal proceedings), and its progeny.

Although this case raises an issue not directly addressed by *Younger* or its progeny, or heretofore by our court, it presents the same concerns for federalism and comity that animate established *Younger* jurisprudence, and therefore we conclude, as a "necessary concomitant" of *Younger*, that abstention was appropriate. *See Huffman v.*

*Pursue, Ltd.*, 420 U.S. 592, 608 (1975). In particular, we hold that a defendant to a coercive state administrative proceeding must exhaust his state administrative and judicial remedies and may not bypass them in favor of a federal court proceeding in which he seeks effectively "to annul the results" of a state administrative body. *Id.* at 608-09; *see also Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.*, 477 U.S. 619, 627 (1986) (applying *Younger* to state administrative proceedings). Accordingly, we affirm the district court's application of the *Younger* doctrine to the circumstances of this case, and, because state proceedings have concluded, we remand this case to the district court with instructions to dismiss the complaint in its present form.

I

Moore has spent his weekends over the past seven years preaching the Christian Gospel on streets, sidewalks, and other public rights-of-way in North Carolina. On two occasions, while preaching in public forums in the City of Asheville, Moore was cited by police officers for violating Asheville's noise ordinance.

Asheville's noise ordinance prohibits activity "on any premises or public area in the city, which activity produces or constitutes a noise disturbance on occupied neighboring premises or public area." Asheville, N.C., Code of Ordinances § 10-83. The ordinance defines "noise disturbance" as "any unreasonably loud and raucous sound or noise which: (1) Endangers or injures the health or safety of humans or animals; (2) Endangers or injures personal or real property; or (3) Disturbs a reasonable person of normal sensitivity." *Id.* § 10-82. In addition to the general prohibition against noise disturbances, the ordinance outlaws specific activities that tend to "produce unreasonably loud and raucous noises," including "[s]treet vending or peddling" and "[t]he use of any drum, loudspeaker or other instrument or device for the purpose of attracting attention by creation of noise to any performance, show, or sale or display of merchandise." *Id.* § 10-84.

An individual charged under and found to have violated the noise ordinance can appeal to the Noise Ordinance Appeals Board, *id.* § 10-86, and the decision of the Appeals Board can be appealed further to

the City Manager, *id.* Finally, North Carolina common law allows judicial review of the City Manager's decision by a writ of certiorari issued by a state Superior Court. *See Russ v. Bd. of Educ.*, 59 S.E.2d 589, 591 (N.C. 1950).

Moore received the first of his citations on March 29, 2003, when he began preaching near Pritchard Park while a permitted peace rally was taking place. An Asheville police officer told Moore that he would need to leave the area and move to the other side of the street. Moore proceeded across the street, as directed, but he continued to preach to the crowd attending the peace rally. The officer then cited Moore for engaging in "street vending or peddling" so as to cause a noise disturbance, in violation of Asheville Ordinance § 10-84. The citation assessed a $50 fine, which Moore paid without challenging the citation.

Moore received his second citation on April 19, 2003, when he preached near City County Plaza, where a permitted event was taking place. This citation charged that Moore was "causing [a] disturbance by shouting a[nd] yelling at [the] crowd during [a] permitted event." He was again charged under the noise ordinance, this time for using a "drum, loudspeaker or other instrument or device for the purpose of attracting attention by creation of noise to any performance, show, or sale or display of merchandise." Because it was Moore's second violation of the noise ordinance, the citation assessed a fine of $100. Moore appealed this citation to the Noise Ordinance Appeals Board, as authorized by Asheville Ordinance § 10-86. After the Board affirmed the violation, Moore paid the $100 fine and sought no further review of the citation.

Rather than pursuing further his rights of state administrative appeal and judicial review, Moore apparently let the times for taking appeal from his citations lapse,[1] and he commenced this action in fed-

---

[1]The record is not completely clear as to the status of Moore's right to appeal his second citation at the time he commenced this action on August 28, 2003. The noise ordinance gave Moore 15 days from the date of the citation (April 19, 2003) to seek review from the Appeals Board. The ordinance also specifies that Appeals Board hearings shall occur

eral court on August 28, 2003. In his complaint, which names the City of Asheville, its City Manager, and its police department as defendants, Moore facially challenges the constitutionality of Asheville's noise ordinance and related ordinances and challenges the noise ordinance *as applied* to him in March and April 2003. He alleges that the ordinances violated and continue to violate his freedom of speech, his right peaceably to assemble, and his right to the free exercise of religion, as secured by the First and Fourteenth Amendments.

In his complaint, Moore recites the defendants' actions on both March 29, 2003 and April 19, 2003, when he was cited for violations of the noise ordinance, and he alleges that he continues to engage in street preaching and "fears repeated civil or criminal citations." He alleges further that Asheville's "Noise Disturbance Policy, as applied, has caused and will continue to cause, [him] to suffer actual and impending irreparable injury and damage" and that he has incurred "constitutional and monetary damages as a result of Defendants' actions." The resulting damages, he alleges, were both "direct and consequential." For relief, Moore requests an injunction prohibiting the defendants "from enforcing the policies against Plaintiff"; a declaratory judgment declaring that the noise ordinance is invalid on its face and "as applied by Defendants insofar as it prohibits Plaintiff from street preaching"; and an award of "such damages as are reasonable and just under the circumstances as a direct and proximate result of the Defendants' violations of Plaintiff's constitutional rights." In addition to challenging the noise ordinance, Moore also facially challenges related statutes that were not enforced against him, including Asheville's public speaking and picketing ordinances.

On the City of Asheville's motion to dismiss, the district court dismissed the claims against the City Manager because they were redun-

---

within 15 days of the notice of appeal and that "decisions shall be issued and served within ten days of the hearing." Asheville, N.C., Code of Ordinances § 10-86(e)(1). Under that schedule, therefore, Moore's 10-day period to appeal to the City Manager would have expired sometime in late June 2003. We cannot presume with certainty, however, that the schedule established by the ordinance was in fact followed because the ordinance gives the Appeals Board the power to extend, by order, "[t]he times for conducting hearings and issuing decisions." *Id.*

dant with claims against the City itself and the claims against the Asheville Police Department because, under North Carolina law, the department is not a person capable of being sued. It also dismissed the claims challenging the public speaking and picketing ordinances because Moore failed to demonstrate a "credible threat of prosecution" under them. The court, however, denied the motion to dismiss the remainder of the complaint against the City, concluding rather that, under the holding of *Younger v. Harris*, it should abstain from determining Moore's remaining claims against the City. Accordingly, the court stayed the case "pending the outcome of the state proceedings." By this time, it was certain that no state proceedings were pending and that the times for appealing the citations had elapsed.

From the district court's November 13, 2003 order, Moore filed this appeal, challenging only the district court's order staying his claims against the City under the *Younger* doctrine.

II

Because the district court stayed Moore's claims, rather than dismissing his complaint, we initially must consider whether the district court's November 13, 2003 order is a final judgment so as to give us jurisdiction over Moore's appeal. Section 1291 of Title 28 grants courts of appeals appellate jurisdiction over "final decisions of the district courts," and a "final decision" is one that "ends the litigation on the merits and leaves nothing for the [district] court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233 (1945). In *Quackenbush v. Allstate Insurance Co.*, 517 U.S. 706, 713 (1996), however, the Supreme Court held that a district court order that stayed federal court proceedings pending the outcome of state court proceedings was immediately appealable even though it did not fit comfortably within the definition of a final judgment. The finality of the order entered in this case is yet more certain because the effect of the district court's order to stay, pending the outcome of a state proceeding, effectively ended the litigation in view of the facts that no state court proceedings were pending at the time of the district court's order and the administrative "judgments" were no longer appealable.

Accordingly, we conclude that we have jurisdiction to review the district court's order.

### III

Stated simply, the *Younger v. Harris* doctrine holds that

> a federal court should abstain from interfering in a state pro-
> ceeding, even though it has jurisdiction to reach the merits,
> if there is (1) an ongoing state judicial proceeding, instituted
> prior to any substantial progress in the federal proceeding;
> that (2) implicates important, substantial, or vital state inter-
> ests; and (3) provides an adequate opportunity for the plain-
> tiff to raise the federal constitutional claim advanced in the
> federal lawsuit.

*Nivens v. Gilchrist*, 319 F.3d 151, 153 (4th Cir. 2003) (citing *Middle-sex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)).

In *Younger* itself, after the plaintiff had been indicted under the California State Syndicalism Act but before he was tried, the plaintiff filed a federal action seeking to enjoin the state proceedings on the ground that the Syndicalism Act violated the U.S. Constitution. After the lower federal courts enjoined the state court proceedings, the Supreme Court reversed and instructed that "the normal thing to do when federal courts are asked to enjoin pending proceedings in state courts is not to issue such injunctions" unless the federal plaintiff demonstrates either that he will suffer irreparable injury that is "both great and immediate" or that the state statute is "flagrantly and patently" unconstitutional. *Younger*, 401 U.S. at 45, 53. Relying on equitable principles, the Supreme Court concluded that the federal plaintiff seeking the equitable remedy of an injunction failed to dem-onstrate that the state proceedings threatened him with injury that would remain unremedied if the state proceedings terminated in his favor. *Id.* at 54. The Court, however, did not rely only on equitable principles. It was also concerned about the "more vital" notion of fed-eralism and comity implicated by interfering with ongoing state pro-ceedings:

> This underlying reason for restraining courts of equity from
> interfering with criminal prosecutions is reinforced by an
> *even more vital consideration*, the notion of 'comity,' that

is, a proper respect for state functions, a recognition of the
fact that the entire country is made up of a Union of separate
state governments, and a continuance of the belief that the
National Government will fare best if the States and their
institutions are left free to perform their separate functions
in their separate ways.

*Id.* at 44 (emphasis added). This underlying policy heightened the
degree of irreparable injury a plaintiff had to show to obtain such an
injunction — namely, that the state statute was "flagrantly and
patently" unconstitutional or that it was being enforced in "bad faith,"
in a harassing manner, or in "any other unusual circumstance that
would call for equitable relief." *Id.* at 54.

Moore contends first that the district court erroneously applied the
doctrine of *Younger v. Harris* because that doctrine applies only to
protect ongoing state proceedings from federal interference. He points
out that there were no pending state proceedings at the time because
he had forgone the opportunity to appeal both the first citation by pay-
ing the $50 fine and the second citation by not appealing to the City
Manager within the time allowed by the ordinance. Similarly, he
argues, at the time of the district court's decision to abstain, the City
administrative bodies and the state courts were "doing nothing related
to [his] Noise Ordinance citations[;] they plan[ned] on doing nothing
related to the citations, nor could they [have done] anything in the
future related to the citations."

Before addressing Moore's argument that the lack of any pending
state proceedings renders *Younger* inapplicable, we are prompted by
Moore's emphasis on the finality of the administrative decisions in
this case to consider first two separate, but closely related doctrines:
*res judicata*, *see Huffman*, 420 U.S. at 607-08 n.19, and the *Rooker-
Feldman* doctrine, as Moore himself has suggested.

It is now established by federal common law that federal courts
will apply *res judicata* to unreviewed determinations of state adminis-
trative agencies if the State itself would do so. *See Univ. of Tenn. v.
Elliott*, 478 U.S. 788, 799 (1986) (holding that "when a state agency
acting in a judicial capacity resolves disputed issues of fact properly
before it which the parties have had an adequate opportunity to liti-

gate, federal courts must give the agency's factfinding the same pre-clusive effect to which it would be entitled in the State's courts" (internal quotation marks and citation omitted)). The Court drew on the rationale of the full-faith-and-credit provisions of 28 U.S.C. § 1738 and the Full Faith and Credit Clause of the U.S. Constitution, U.S. Const. art. IV, § 1, to adopt a federal common law principle that serves the values of both repose and federalism. *Id.* at 798-99. Thus, if North Carolina were to give its own unreviewed determinations of administrative agencies preclusive effect, so too would a district court in a federal action. But *res judicata* was not raised as a defense before the district court, and that court accordingly did not address the ques-tion of its applicability. *See Huffman*, 420 U.S. at 607-08 n.19.

The *Rooker-Feldman* doctrine might likewise be considered to bar a federal action from in effect reviewing state administrative agency "judgments."[2] Because the decision of an administrative agency can be appealed vertically by petitioning the state courts and the U.S. Supreme Court for review, it might be argued that the *Rooker-Feldman* doctrine should apply to administrative "judgments" as it does to court judgments — i.e., to bar what in effect would become a lateral review of a state agency "judgment" in a U.S. district court. Again, however, this issue was neither presented to the district court nor decided by it. Moreover, while we have never considered the question, other courts of appeals have concluded that the *Rooker-Feldman* doctrine does not apply to *administrative* "judgments," lim-iting its application only to state *court* judgments. *See, e.g., Van*

---

[2]As we summarized the *Rooker-Feldman* doctrine in *American Reli-able Insurance Co. v. Stillwell*, 336 F.3d 311 (4th Cir. 2002), "a 'party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court.'" *Id.* at 316 (quoting *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994)). Although federalism and comity surely attend application of the *Rooker-Feldman* doctrine, the doctrine operates principally to preserve the structure of appeals from state courts to the United States Supreme Court under 28 U.S.C. § 1257(a) and to bar any proceeding that would functionally amount to a lateral appeal to a United States district court. *See Stillwell*, 336 F.3d at 316-17. For this reason, the *Rooker-Feldman* doctrine prohibits a district court even from "consideration of 'issues actually presented to and decided by a state court.'" *Id.* at 317 (quoting *Plyler v. Moore*, 129 F.3d 728, 731 (4th Cir. 1997)).

*Harken v. City of Chicago*, 103 F.3d 1346, 1348-49 (7th Cir. 1997); *Narey v. Dean*, 332 F.3d 1521, 1525-26 (11th Cir. 1994); *Ivy Club v. Edwards*, 943 F.2d 270, 284 (3d Cir. 1991); *Scott v. Flowers*, 910 F.2d 201, 208 (5th Cir. 1990).

More important to the issue before us are the subtle distinctions to be made between the policies underlying *res judicata* and the *Rooker-Feldman* doctrine, on the one hand, and those underlying the *Younger* doctrine, on the other. Although *res judicata* and *Rooker-Feldman* bar federal courts from reconsidering state court judgments, those doctrines are not designed specifically to promote respect for state substantive policies, and they thus apply regardless of whether the state judgment implicates a substantive state interest. The *Younger* doctrine, on the other hand, addresses both concerns as demonstrated by the Supreme Court's extension of *Younger* beyond the context of state criminal proceedings to only those state proceedings that implicate equally weighty state interests.

In extending *Younger* to prescribe abstention in favor of state *civil* actions, the Supreme Court in *Huffman*, 420 U.S. 592, was mindful that the doctrine was originally applied to protect the state interests represented in *criminal* prosecutions. Consequently, it extended the *Younger* doctrine only to civil cases in which important state interests were at stake, such as a nuisance action:

> Strictly speaking, this element of *Younger* [the reluctance of federal courts to interfere with a criminal prosecution] is not available to mandate federal restraint in civil cases. But whatever may be the weight attached to this factor in civil litigation involving private parties, we deal here with a state proceeding which in important respects is more akin to a criminal prosecution than are most civil cases. The State is a party to the Court of Common Pleas proceeding, and the proceeding is both in aid of and closely related to criminal statutes which prohibit the dissemination of obscene materials. Thus, an offense to the State's interest in the nuisance litigation is likely to be every bit as great as it would be were this a criminal proceeding.

*Id.* at 604. Thus, recognizing that the State's nuisance action was a coercive civil proceeding to which the State was a party, the Supreme Court concluded that federal court interference would disrupt the State's efforts "to protect the very interests which underlie its criminal laws." *Id.* at 605; *see also Ohio Civil Rights Comm'n*, 477 U.S. at 628 (holding that the "elimination of prohibited sex discrimination is a sufficiently important state interest" to bring state *administrative* proceedings by a civil rights commission within the ambit of *Younger*); *Middlesex County Ethics Comm.*, 457 U.S. at 434 (holding that *Younger* protects ongoing state *disciplinary* proceedings because the State "has an extremely important interest in maintaining and assuring the professional conduct of the attorneys it licenses").[3]

The case before us implicates not only concerns about avoiding duplicative litigation and respecting the appellate processes designed by Congress and the Asheville City Council, but also concerns about respecting Asheville's efforts to enforce its substantive policies against noise disturbances. Because *Younger* is the only doctrine that addresses all of these concerns, and because neither *res judicata* nor the *Rooker-Feldman* doctrine was raised in the district court, we conclude that *Younger* is the doctrine most completely applicable to the circumstances of this case.

According to Moore, the fact that the state proceedings concluded prior to his federal complaint undermines the rationale behind *Younger* abstention. He states, "If *Younger*'s underpinnings rest on a desire of the federal courts to not 'unduly interfere with the legitimate activities of the States,' then once the state proceedings have become final, for whatever reason, there is no justification for a federal court to abstain because there is no interference with the legitimate activities of the states" (quoting *Younger*, 401 U.S. at 44). He adds, "*Younger* does not require abstention merely because [he] at one point had a state remedy available to him which he chose not to pursue because

---

[3]Although the Supreme Court has since extended *Younger* beyond proceedings to which the State is a party, *see, e.g.*, *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 13 (1987), it has done so only when the civil proceedings "involv[e] certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 368 (1989).

those state proceedings are now completely final. . . . *Younger* never intended such an absurd result."

Although Moore's argument makes sense under *Younger*'s original articulation, it overlooks the Supreme Court's extension of the doctrine in subsequent cases to give full effect to the policies underlying *Younger* in the context of completed state proceedings. In *Huffman*, the Supreme Court applied *Younger* to bar a federal action, even when the state court proceedings had ended by the time the federal complaint was filed, so long as the federal complaint was designed "to annul the results of a state trial." *Huffman*, 420 U.S. at 609. It is true that the Supreme Court has not yet held that a federal court should abstain under *Younger* from hearing a federal claim when the plaintiff has failed to exhaust state administrative remedies and defaulted on his opportunity to do so. The Court did, however, suggest such an application in *Huffman* and applied the *Younger* doctrine in the face of pending administrative proceedings in *Ohio Civil Rights Commission*, 477 U.S. at 628-29.

In *Huffman*, the plaintiff filed a federal § 1983 action to enjoin, on U.S. constitutional grounds, enforcement of a state court civil judgment entered against him, declaring that his theater was a nuisance because it showed pornographic films. Noting that the plaintiff had failed to appeal the judgment to the state appellate court, the Supreme Court held that the lower federal court should have abstained from enjoining the enforcement of the judgment under the *Younger* doctrine.

The strict holding of *Huffman* applied *Younger* to bar federal intervention into a state coercive civil proceeding when the plaintiff filed his federal complaint *after* the state judgment had been rendered but *before* the time for appealing had run its course. Although it was unclear whether the state court judgment had become nonappealable before the federal court entered its injunction judgment, the Supreme Court suggested that that fact was not critical to the application of the *Younger* doctrine:

> We need not, however, engage in such inquiry. For regardless of when the Court of Common Pleas' judgment became final, we believe that a necessary concomitant of *Younger* is

that a party in appellee's posture must exhaust his state appellate remedies before seeking relief in the District Court, unless he can bring himself within one of the exceptions as specified in *Younger*.

420 U.S. at 608. The Court's lack of concern about the relative timing of the federal and state court proceedings was deliberate to allow the Court to maintain its focus on the core *Younger* concerns of (1) whether the federal action was "duplicative," (2) whether it cast a "direct aspersion on the capabilities and good faith of state appellate courts," (3) whether it was "disruptive" of the State's important interests, and (4) whether the federal action was "designed to annul the results of [the] state trial." *Id.* at 608-09.

In the case before us, Moore sought federal court intervention apparently *after* the state administrative "judgment" had become non-appealable by reason of his failure timely to take available state avenues of review. To apply *Younger* to this circumstance might stretch *Huffman* slightly beyond its strict holding. But we conclude that any differences between the timing in this case and in *Huffman* do not alter the proper legal analysis. We continue to focus on *Younger*'s policy of commanding federal restraint when the federal action is duplicative, casts aspersion on state proceedings, disrupts important state enforcement efforts, and is designed to annul a state proceeding.

By initiating this suit in federal court after the state administrative agency determined that he had violated the noise disturbance ordinance, Moore seeks to relitigate a dispute that has already been resolved and to receive as damages the amounts that he paid as fines. Moreover, to the extent that Moore in this case seeks to annul or trample on the results of state administrative proceedings, he interferes with the State's interest in enforcing its substantive laws as well as its interest in enforcing those laws through available administrative procedures and in its own courts. That Moore did not avail himself of state-provided avenues for review can only cast aspersion on the State's "capabilities and good faith," *Huffman*, 420 U.S. at 608, and deprive the State of "a function which quite legitimately is left [to the state appellate bodies], that of overseeing [agency] dispositions of constitutional issues which arise in civil litigation over which they have jurisdiction," *id.* at 609. Federal court intervention would also

disrupt the City's efforts to enforce its substantive policy against noise disturbances.

Thus, regardless of whether state appellate remedies were still available at the time Moore filed suit in federal court or whether he had already defaulted on such remedies, the federal court intervention that he sought would be duplicative, would disrupt the State's substantive policies, would offend the State's appellate processes, and would undo what the State has done by a now-nonappealable order. Accordingly, we conclude that under *Huffman*, the *Younger* doctrine applies to bar federal court reconsideration of state coercive proceedings even when the state proceedings have ended, as long as the federal proceeding casts aspersion on the state proceedings or annuls their results.

The final step to application of the *Younger-Huffman* doctrine to this case, however, requires consideration of whether the exhaustion principles imposed by the *Huffman* Court to protect state appellate *court* proceedings apply as well to protect state appellate *administrative* proceedings. To conclude that they do, we rely on the Court's decision in *Ohio Civil Rights Commission*, 477 U.S. 619. There, the Supreme Court held that *Younger* required federal courts to abstain in favor of pending state *administrative* proceedings.[4] Rejecting the plaintiff's argument that abstention in favor of such proceedings was inappropriate because state law did not authorize the agency to address constitutional challenges, the Court explained that abstention was nonetheless appropriate because the agency could "construe its own statutory mandate in the light of federal constitutional principles" or the plaintiff could raise its constitutional claims in "state-court judicial review of the administrative proceeding." *Id.* at 629.

---

[4]Generally, claimants bringing suit in federal court under 42 U.S.C. § 1983 need not exhaust their administrative remedies. *See Patsy v. Florida Bd. of Regents*, 457 U.S. 596 (1982). In *Ohio Civil Rights Commission*, however, the Court distinguished remedial state administrative proceedings, which it had addressed in *Patsy*, from those that are coercive, concluding that *Younger* requires federal courts to abstain in favor of pending state administrative proceedings that are coercive in nature. 477 U.S. at 627 n.2. The administrative proceedings against Moore were unquestionably coercive, as were those in *Ohio Civil Rights Commission*, and the *Patsy* principle is therefore inapplicable.

We find the rationale behind the Court's holding in *Ohio Civil Rights Commission* equally applicable where the administrative proceedings are no longer pending because of the plaintiff's failure to exhaust his administrative appellate remedies. In particular, by failing to pursue administrative appellate remedies, the plaintiff short-circuits both the agency's ability to interpret its statutes in conformity with the Constitution and the state courts' ability to correct constitutionally infirm agency decisions.

At bottom, we conclude that the *Younger* principles were properly applied in this case to bar federal court intervention in state administrative proceedings even when the defendant to those proceedings had failed to exhaust available administrative appeals, thereby defaulting on his appellate rights. Such a holding rests, we conclude, on the rationales of *Huffman* and *Ohio Civil Rights Commission*, which extended *Younger* to circumstances like those before us.

IV

At oral argument, Moore seemed to concede the application of the *Younger* principles to unexhausted but completed administrative proceedings, and he redirected his argument more forcefully to his second contention that his complaint does not look retrospectively on the state enforcement proceedings against him and therefore does not seek to challenge or annul them. Indeed, as he argues, his complaint is forward-looking, filed in an effort to declare Asheville's ordinances unconstitutional for future application. In his brief, he maintains that if he is not able to prosecute this action for such prospective relief, he would "be left to either flout the Asheville noise ordinance or forgo his constitutional right to free speech." "Abstaining in this case," he states, "would have the absurd and unintended result of leaving Moore with no remedy for the violation of his constitutional rights."

Of course, if Moore is correct about his characterization of his complaint, he is correct in arguing that the *Younger* doctrine should not be applied to stay this action. *See Wooley v. Maynard*, 430 U.S. 705, 711 (1977) (noting that *Younger* does not bar a *wholly prospective* federal action even if the plaintiff failed to exhaust his state appellate remedies on a prior conviction). In *Wooley*, the federal

plaintiff had been convicted of violating a state statute and had already served his sentence when he brought suit in federal court, seeking a declaratory judgment that the statute under which he had been convicted was unconstitutional and an injunction enjoining the State from prosecuting him in the future under the statute. *Id.* at 708-09. Because the federal plaintiff sought prospective relief against the threat of future prosecution and did not seek to "have his record expunged, or to annul any collateral effects" of his conviction, the Supreme Court held that *Younger* did not require the federal court to abstain even though the plaintiff had failed to seek review of his conviction in the state appellate court. *Id.* at 710-11.

While Moore's argument rests on sound legal principles, we disagree with his characterization of his complaint as *wholly prospective*. To be sure, his complaint does request a declaratory judgment and an injunction from future prosecution, and such relief may be based on allegations in the complaint that Moore's street preaching is ongoing. But the complaint also seeks to annul the effects of the prior state administrative proceedings to the extent that Moore seeks a declaratory judgment that the City of Asheville unconstitutionally applied its ordinances to cite him in the past and demands direct and consequential monetary damages from the City for its actions.

Moore's complaint lays out in some detail the City's actions in citing him for violation of the noise ordinance, once in March and again in April 2003. He alleges that both of the City's enforcement actions were illegal inasmuch as they relied on an ordinance that was unconstitutional under the First Amendment, and he asserts that these enforcements caused him monetary damages, both direct and consequential. For example, he repeatedly alleges in his complaint that Asheville's noise ordinance "as applied, has caused . . . Plaintiff to suffer actual . . . injury and damage"; that "Plaintiff has and will continue to suffer . . . monetary damages as a result of [the City's] actions"; that he has "in the past and will continue to suffer in the future, direct and consequential damages." And in his prayer for relief, he demands "such damages as are reasonable and just under [the] circumstances as a direct and proximate result of [the City's] violations of Plaintiff's constitutional rights."

These demands for monetary damages in respect to the City's actions are retrospective in that they seek to compensate Moore for

injury that has already occurred; they look backward toward a wrong committed in the past. *Cf. Edelman v. Jordan*, 415 U.S. 651, 668 (1974) (explaining that a remedy that is "measured in terms of a monetary loss resulting from a past breach of a legal duty" is *retrospective* for purposes of Eleventh Amendment immunity). Obviously such an award would annul the effects of the State's proceedings by essentially refunding to Moore part or all of the fines he paid in connection with his citations. Because Moore's complaint in its present form is not limited to seeking prospective relief, it does not fit within the *Wooley v. Maynard* exception to *Younger*'s exhaustion requirement. Thus, the district court correctly applied *Younger* in abstaining from proceeding further under Moore's complaint as it is drafted.

V

In sum, Moore's complaint challenging Asheville's noise ordinance is broad, alleging both past conduct by the City, which he contends was illegal and damaging, and ongoing unlawful conduct. For relief, he seeks a declaration that the City's enforcement in the past was illegal and continues to be illegal; that the City be enjoined; and that the City pay him direct and consequential money damages for its past conduct. To the extent that Moore's complaint looks back on the City's past actions and demands compensation for them, it seeks to annul what has already been determined by two police officers and the Asheville Noise Ordinance Appeals Board. Even though no state proceedings were pending when Moore filed his federal complaint — because he had let the times for appeal lapse — we conclude that his efforts in this case to cast aspersion on state processes and to annul the results of administrative proceedings were properly barred by the district court under *Younger-Huffman*. Accordingly, we affirm.

Because no avenues are now open for Moore to exhaust state administrative and judicial appeals with respect to his two citations, his federal complaint must be dismissed in its present form. Accordingly, we remand to permit the district court to modify its order in this regard. Of course, Moore is not barred from attempting to pursue wholly prospective relief in federal court as authorized by *Wooley v. Maynard*.

*AFFIRMED AND REMANDED*